**Robert W. KEARNS, Plaintiff/Cross–Appellant,**

v.

**CHRYSLER CORPORATION, Defendant/Appellant,**

and

**American Motors Corporation, Defendant.**

Nos. 93–1450, 93–1470.

United States Court of Appeals, Federal Circuit.

Aug. 11, 1994.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Sept. 28, 1994.

---

Robert W. Kearns, pro se.

Robert P. Taylor, Pillsbury, Madison & Sutro, Washington, DC, argued for defendant/appellant. With him on the brief was Lawrence F. Scinto, Fitzpatrick, Cella, Harper & Scinto, New York City. Of counsel were Deanne C. Siemer and Michael A. Conley.

William D. Durkee, Arnold, White & Durkee, Houston, TX, was on the brief for amicus curiae, Arnold, White & Durkee. Of counsel were William B. Allison and James G. Munisteri, Sewell & Riggs, Houston, TX.

Richard L. Aitken and Andrew C. Aitken, Lane, Aitken & McCann, Washington, DC, were on the brief for amicus curiae, Houston Inventors Ass'n.

Before LOURIE, RADER, and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

Chrysler Corporation and Robert W. Kearns appeal and cross-appeal, respectively, from the final judgment of the United States District Court for the Eastern District of Michigan awarding Kearns $18,740,465.43. The judgment was entered on jury verdicts that three patents owned by Kearns were infringed by Chrysler. *Kearns v. Chrysler Corp.*, Civil No. 82–70748 (E.D.Mich. Oct. 30, 1992). The court denied Chrysler's motion for judgment as a matter of law or in the alternative for a new trial. *Kearns v. Chrysler Corp.*, Civil No. 82–70748 (E.D.Mich. June 3, 1993). We affirm the judgment in all respects.

## BACKGROUND

In 1982, Kearns filed an action against Chrysler alleging infringement of U.S. Patents 3,351,836, 3,564,374, 3,602,790, and 3,581,178, all relating to electronic intermittent windshield wipers (IWWs) for use in automotive vehicles. At the time the suit was filed, Kearns had three similar suits pending against other automobile manufacturers and distributors involving the same patents, *Kearns v. Ford Motor Co.*, Civil Action No. 78–70740 (E.D.Mich.); *Kearns v. Wood Motors, Inc.*, Civil Action No. 78–70642

(E.D.Mich.); *SWF–Spezialfabrik fur Autozubehor Gustav Rav GmbH v. Kearns*, Civil Action No. 79–74451 (E.D.Mich.).[1]

On October 22, 1982, proceedings in the Chrysler action were stayed pending resolution of the earlier filed suits. The stay was instituted pursuant to Chrysler's stipulation that it would be "bound by the judgment as to the validity of … U.S. patent Nos. 3,351,-836, 3,564,374, 3,581,178, and 3,602,790" in either *Ford, Wood Motors*, or *SWF*, whichever was the last to be adjudicated. The stipulation expressly provided, however, that Chrysler would "not be bound by any consent judgment."

In 1989, shortly before the Ford case went to trial, Chrysler renewed its stipulation regarding the issues of invalidity and unenforceability. Subject to continuation of the court-ordered stay, Chrysler agreed to be "bound by the judgment (excluding a consent judgment) in the *Kearns v. Ford* case, C.A. 78–70740 as to the validity and enforceability of the patents involved in that action that are also involved in this action. Those patents included United States Patent Nos. 3,351,836, 3,564,374, 3,581,178, and 3,602,790." That stipulation was subsequently entered by the court on February 15, 1990.

### 1. The Ford Litigation

The liability phase of the Ford case commenced on January 3, 1990. On January 29, 1990, the jury returned a unanimous verdict for Kearns, finding that Ford had not proved by clear and convincing evidence that claim 16 of the '836 patent, claim 6 of the '374 patent, claim 14 of the '790 patent, and claim 6 of the '178 patent were invalid or unenforceable. On March 9, 1990, the district court entered partial judgment that the specified claims were valid, enforceable, and infringed by Ford. That partial judgment was eventually "made final" upon entry of the court's final judgment on November 14, 1990.

---

1. Kearns subsequently filed other infringement actions involving patents relating to IWWs, *e.g.*, *Kearns v. General Motors Corp.*, Civil Action No. 85–70461 (E.D.Mich.), *aff'd*, 31 F.3d 1178 (Fed. Cir.1994); *Kearns v. Toyota*, Civil Action No. 85–70459 (E.D.Mich.); *Kearns v. Ferrari SpA.*, Civil

Action No. 85–70459 (E.D.Mich.); *Kearns v. American Motors Corp.*, Civil Action No. 85–70460 (E.D.Mich.) (consolidated with the instant case by order of the district court on February 3, 1990).

The damage phase of *Ford* was tried before the same jury in April, 1990. The jury, however, was unable to reach a unanimous verdict and a second trial on damages was held in July, 1990. The second jury ultimately returned a unanimous verdict in favor of Kearns, awarding $5,163,842 for the period from April 3, 1978 through 1988. On July 13, 1990, partial judgment was entered on the damage award assessed by the second jury. Although damages for the period from 1972 to April 3, 1978 remained in dispute, Ford and Kearns eventually reached a settlement as to the total amount of liability. Consequently, the partial judgment on damages was vacated and Ford withdrew its pending post-verdict motions for judgment notwithstanding the verdict or in the alternative for a new trial and waived its appellate rights.

### 2. The Chrysler Litigation

The Chrysler case returned to active status in early 1991. On February 20, 1991, the district court issued a pretrial order stating that the issues to be adjudicated at trial concerned "infringement, damages, and willfulness." On May 3, 1991, Chrysler filed a motion to have the pretrial order modified to add patent validity as an issue for trial. In support of its motion, Chrysler argued that the pretrial stipulations of October 15, 1982 and February 15, 1990 did not bar Chrysler from challenging the patents in suit. Chrysler claimed that because the final judgment in *Ford* was entered pursuant to a settlement agreement between Ford and Kearns, it was a "consent judgment" within the meaning of the stipulations.

The district court denied the motion and limited trial to the issues stated in the pretrial order. In rejecting Chrysler's argument, the district court noted that although a

settlement had been reached in *Ford* on the issue of damages, the issue of validity was "hotly" contested by the parties at trial, resulting in a unanimous jury verdict and a final judgment in favor of Kearns. Moreover, the court found that the stipulations did not obligate Ford to pursue post-trial motions and exhaust all rights of appeal in order for the judgment in *Ford* to be binding on the parties in *Chrysler*.

By order of the court, the Chrysler action was bifurcated into separate jury trials on the issues of liability and damages. On December 10, 1991, the jury returned verdicts that Chrysler's accused IWW circuits, designated the "1977 Circuit" and the "1980 Circuit," infringed claim 12 of the '836 patent, claim 6 of the '374 patent, and claim 14 of the '790 patent.[2] On June 11, 1992, the same jury returned a verdict that Chrysler's infringement was not willful and assessed a reasonable royalty of $.90 per unit for a total of 12,564,107 infringing units.[3] Pursuant to the jury's verdicts, the district court entered final judgment in favor of Kearns in the amount of $18,740,465.43, including prejudgment interest and costs.[4]

Chrysler subsequently filed a motion for judgment as a matter of law (JMOL), asserting that the jury's findings of infringement were not supported by substantial evidence. Alternatively, Chrysler moved for a new trial, claiming that the district court improperly excluded evidence and misinstructed the jury on critical legal issues. The district court denied Chrysler's post-verdict motions. The court considered the expert testimony adduced at trial together with the documentary evidence of record to be a sufficient basis upon which the jury could have supported its findings of infringement. Further, the court determined that the exclusion of evidence

**2.** The jury also found that Chrysler infringed claim 7 of the '178 patent. Due to an inconsistency between the jury's general verdict of infringement and its answer to a special question, the district court set aside the jury's finding and entered judgment of noninfringement pursuant to Fed.R.Civ.P. 49(b). The court's judgment respecting claim 7 is not at issue in this appeal.

**3.** The Court subsequently revised the number of infringing units downward to 12,563,107 units.

**4.** Specifically, the judgment consisted of $11,306,696.30 for infringement damages, $8,075,193 for prejudgment interest, and $25,898.75 for costs, less $667,322.62 in costs, expenses, and attorneys' fees awarded to Chrysler.

was not prejudicial to Chrysler's substantive rights and that the jury was correctly instructed on the interpretation of the claims and their application to the accused circuits.

## DISCUSSION

Chrysler now appeals, asserting that the district court's judgment should be reversed as a matter of law because the underlying jury verdicts of infringement were not supported by substantial evidence, or in the alternative, that a new trial is warranted in view of the prejudicial error committed by the district court in barring Chrysler from introducing prior art evidence necessary to properly construe the claims at issue and to challenge their validity and enforceability. Kearns cross-appeals certain rulings of the court that allegedly deprived him of the total compensation to which he claims he is entitled.

### New Trial

■ We first address the district court's denial of Chrysler's motion for a new trial. "The denial of a motion for new trial can be reversed only if the district court abused its discretion." *Arachnid, Inc. v. Medalistic Marketing Corp.,* 972 F.2d 1300, 1301, 23 USPQ2d 1946, 1948 (Fed.Cir.1992) (citation omitted); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.,* 953 F.2d 1360, 1367, 21 USPQ2d 1321, 1326 (Fed.Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 60, 121 L.Ed.2d 28 (1992). An abuse of discretion may be established by showing that the district court either made an error of law, a clear error of judgment, or made findings which were clearly erroneous. *See Mendenhall v. Cedarapids, Inc.,* 5 F.3d 1557, 1569, 28 USPQ2d 1081, 1091 (Fed.Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1540, 128 L.Ed.2d 192 (1994).

#### 1. Invalidity and Unenforceability

In support of its contention that a new trial is required, Chrysler claims that the district court erred as a matter of law in excluding evidence allegedly showing that the patents in suit are invalid and unenforceable. Chrysler claims that the district court's decision to exclude such evidence was based on an erroneous interpretation of the pretrial stipulation of February 15, 1990,[5] in which Chrysler agreed to be bound by the judgment rendered in the Ford case on the issues of invalidity and unenforceability. It is Chrysler's position that the Ford judgment was in fact a consent judgment, which, under the terms of the stipulation, was not binding on Chrysler.

■ The proper interpretation of the parties' pretrial stipulation, like any contract, presents a legal question that we address *de novo.* *See Intel Corp. v. ULSI Sys. Technology, Inc.,* 995 F.2d 1566, 1569, 27 USPQ2d 1136, 1138 (Fed.Cir.1993), ·*cert. denied,* —— U.S. ——, 114 S.Ct. 923, 127 L.Ed.2d 216 (1994). As always, our inquiry begins with the language of the agreement memorializing the intent of the parties.

■ The controlling language of the agreement between Chrysler and Kearns provides that Chrysler "shall be bound by the [Ford] judgment (*excluding a consent judgment*) . . . as to the validity and enforceability" of the patents in suit. [Emphasis added.] Chrysler asserts that the existence of the "consent judgment" exception in the stipulation indicates that it only intended to be bound by a judgment respecting invalidity and unenforceability where those issues were "fully litigated" by Ford, *i.e.,* only after Ford vigorously defended its position at trial and exhausted all available post-trial remedies. Chrysler insists that the final judgment entered in *Ford* was a "consent judgment" because the parties in that case reached a settlement on the issue of damages that effectively mooted Ford's post-trial motions and forced Ford to forfeit its appellate rights.

---

5. The district court did not rely on the first stipulation of October 15, 1982 in making its disputed evidentiary rulings. The court considered that stipulation to be *functus officio* in view of the February 15, 1990 stipulation. We will therefore limit our discussion to the latter stipulation.

We reject Chrysler's attempts to avoid the consequences of its stipulation by redefining its terms. The fact that Ford was precluded from proceeding with its post-trial motions or seeking appellate review because of its damage settlement does not render the court's judgment a "consent judgment." In our effort to give effect to the original intent of the parties, we adhere to the well-settled rule that words in an agreement are interpreted in accordance with their ordinary and commonly accepted meanings. *See Hol–Gar Mfg. Corp. v. United States,* 351 F.2d 972, 979 (Ct.Cl.1965). The term "consent judgment" is defined as "[a] judgment, the provisions and terms of which are settled and agreed to by the parties to the action." *Black's Law Dictionary* 842 (6th ed. 1990). This meaning is in contradistinction to a judgment that is rendered by a court without agreement of the parties. The commonly accepted meaning of the term "consent judgment" prevails here because the stipulation is devoid of any indication that the parties intended a different meaning.

Although it is undisputed that Ford settled the amount of compensation due Kearns, no such settlement or agreement was reached between the parties in *Ford* respecting the issues of validity, enforceability, and infringement of the asserted patent claims. Indeed, as the trial court noted, those issues were "hotly," "vigorously," and "fully" contested by the parties during a lengthy jury trial.[6] Pursuant to unanimous verdicts returned by the jury, the court entered partial (and later final) judgment holding claim 16 of the '836 patent, claim 6 of the '374 patent, claim 14 of the '790 patent, and claim 3 of the '936 patent valid, enforceable, and infringed. Because neither party in *Ford* "settled and agreed" on the issues of validity and enforceability, the district court's judgment respecting those issues was not a "consent judgment" within the meaning of the stipulation. Chrysler is thus bound by that judgment. *See Restatement (Second) of Judgments* § 40 (1982) ("A person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement.").

In a further attempt to avoid the consequences of its stipulation, Chrysler urges that "public policy" favors allowing it to challenge the patents' validity and enforceability. Even were we to agree with this proposition, we do not see how it aids Chrysler here. Chrysler was certainly entitled to raise the defenses of invalidity and/or unenforceability when it was accused of infringement, but it chose instead to rely on the judgment rendered in *Ford* on those issues. Public policy will not rescue Chrysler from a decision which it later finds to be imprudently made. On the contrary, public policy favors preventing Chrysler from reneging on an agreement into which it freely entered and upon which Kearns and the district court relied. *See Interspiro USA Inc. v. Figgie Int'l Inc.,* 18 F.3d 927, 930, 30 USPQ2d 1070, 1072 (Fed. Cir.1994); *Bank of America Nat'l Trust and Savings Assoc. v. United States,* 23 F.3d 380, 382 (Fed.Cir.1994).

Accordingly, we agree with the district court that Chrysler was barred under the stipulation from introducing prior art evidence directed toward challenging the validity and enforceability of the asserted patents in this case.

## 2. Interpretation of Claims

Next, Chrysler contends that the district court committed reversible error by excluding prior art evidence allegedly essential to the proper construction of the claims at issue. As a result of that error, Chrysler asserts that a new trial is warranted because the jury's infringement analysis was predicated on distorted claim interpretations.

---

**6.** The judge who presided over the Ford litigation also presided over the Chrysler litigation. In rejecting Chrysler's initial attempts to avoid its stipulation, Judge Cohn stated, "I know that I entered a Partial Judgment of Validity, after a hotly contested trial. To my way of thinking . . . there was no Consent Judgment on Validity. Validity was contested. Kearns won, Ford lost and it chose not to appeal, and it withdrew its Motions JNOV or New Trial. That doesn't obviate the fact that it was judgment contested arising in a contested environment."

"The decision to admit or exclude evidence is within the sound discretion of the trial court and will be reversed on appeal only for a clear abuse of that discretion." *Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 13 F.3d 920, 928 (6th Cir.1993). In order to show that the district court abused its discretion in excluding the prior art evidence, Chrysler must demonstrate that the exclusion prejudiced its substantive rights. *See DMI, Inc. v. Deere & Co.*, 802 F.2d 421, 428, 231 USPQ 276, 280–81 (Fed.Cir.1986). Here, Chrysler has failed to make that showing.

It is well-settled that reference may be had to prior art when it will assist a court in determining how a disputed claim is understood by those skilled in the art. *See Palumbo v. Don–Joy Co.*, 762 F.2d 969, 975, 226 USPQ 5, 8 (Fed.Cir.1985); *Tandon Corp. v. International Trade Comm'n*, 831 F.2d 1017, 1021, 4 USPQ2d 1283, 1286 (Fed.Cir.1987). However, when claim language is clear and unambiguous on its face, resort to prior art may be unnecessary.

■ Whether a claim has been infringed requires first interpreting the claim and then comparing the properly construed claim to the accused device. *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821, 23 USPQ2d 1426, 1431 (Fed.Cir.1992). When, as here, prior art is not required to resolve the underlying legal question concerning what a claim means, it necessarily has little relevance to the ultimate factual question of infringement. Such evidence is by definition "irrelevant" and need not be admitted by a trial court. *See* Fed.R.Evid. 401, 402.

At trial, Chrysler attempted to introduce prior art patents ostensibly for the purpose of aiding in the interpretation of the claims at issue. Specifically, Chrysler intended to show that under Kearns' interpretations of the claims, the claims were impermissibly broad because they read upon or were obvi-

ous over the prior art. The district court, however, concluded that the claims could be construed according to their plain meaning and that reference to prior art was not required.[7] Moreover, and highly significant here, the district court believed that Chrysler's attempts to offer such evidence constituted a disguised, "back door" attack on the validity of the patents, which was expressly proscribed by the binding stipulation.

The district court's reasoning adequately supports its refusal to admit the proffered evidence. "[That] we might have reached a different result or might have affirmed had the district court gone the other way are insufficient bases for reversal under the abuse of discretion standard which applies to our review of this part of the court's judgment." *RCA Corp. v. Data General Corp.*, 887 F.2d 1056, 1065, 12 USPQ2d 1449, 1457 (Fed.Cir.1989). Moreover, even if the court committed error in not admitting any particular prior art evidence, we have not been persuaded that the claims were erroneously construed and that Chrysler was thereby prejudiced. The district court's denial of Chrysler's motion for a new trial is therefore affirmed.

### Judgment as a Matter of Law

We now consider Chrysler's argument that the district court erred in denying its motion for judgment as a matter of law on the issue of infringement. Chrysler contends that no substantial evidence supports the jury's findings that Chrysler literally infringed claim 14 of the '790 patent, claim 16 of the '836 patent, and claim 6 of the '374 patent.

■ "We reverse a denial of a motion for JMOL only if the jury's factual findings, presumed or express, are not supported by substantial evidence or, if they are, that the legal conclusions implied from the jury's verdict cannot in law be supported by those

---

7. The claims at issue contain limitations expressed in "means-plus-function" format. 35 U.S.C. § 112 ¶ 6 (1988). The court's ruling is consistent with the rule that "[i]t is not necessary to consider the prior art in applying section 112,

paragraph 6. Even if the prior art discloses the same or an equivalent structure, the claim will not be limited in scope thereby." *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 842, 20 USPQ2d 1161, 1179 (Fed.Cir.1991).

findings." *Arachnid, Inc. v. Medalistic Marketing Corp.*, 972 F.2d at 1301, 23 USPQ2d at 1948 (citation omitted). The "substantial evidence" standard "requires us to decide for ourselves whether reasonable jurors viewing the evidence as a whole could have found the facts needed to support the verdict in light of the applicable law. If we conclude that no reasonable findings of fact, supported by substantial evidence, could support the verdict that was incorporated into the trial court's judgment, then we must conclude that the trial court erred in not granting the motion for [JMOL]." *Lemelson v. General Mills, Inc.*, 968 F.2d 1202, 1207, 23 USPQ2d 1284, 1288 (Fed.Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 976, 122 L.Ed.2d 131 (1993). Moreover, we review the evidence in the light most favorable to Kearns, the nonmoving party, drawing all reasonable inferences in his favor. *See Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 181, 30 USPQ2d 1462, 1464 (Fed.Cir.1994).

■ Chrysler devotes the bulk of its appeal to challenging the jury's findings that the accused circuits performed the functions required by each of the asserted means-plus-function clauses by means of structure taught in the specification or an equivalent of those structures. In doing so, Chrysler pays mere lip service to the substantial evidence standard by ignoring the evidence upon which the jury reasonably relied in reaching its verdicts and by rearguing the merits of the infringement issues. An appeal, however, is not to be used as a means of retrying a case. *See DMI*, 802 F.2d at 426, 231 USPQ at 279. Under the substantial evidence standard, the appellate court's function is exhausted once a sufficient evidentiary basis is deemed to exist to support the jury's findings. *See Richardson v. Suzuki Motor Co.*,

868 F.2d 1226, 1235, 9 USPQ2d 1913, 1919 (Fed.Cir.), *cert. denied*, 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989).

Trial on the issue of infringement lasted approximately four weeks, during which expert testimony was introduced by both parties. Specifically, as the district court stated, "the expert testimony first construed each of the asserted claims and then went on to describe how the Chrysler system responded to each of the elements of each of the claims.... It is this expert testimony together with admissions in Chrysler's documents describing the gestation of the Chrysler system which constituted, for the most part, the substantial evidence supporting the jury's verdict of infringement." After receiving instructions on the law governing infringement of means-plus-function claims,[8] the jury returned verdicts that the asserted claims were literally infringed by Chrysler's accused IWW circuits. Each of the jury's verdicts of infringement was supported by a number of detailed special interrogatories (referred to at trial as "special questions") that addressed specific issues that had been the focus of expert testimony at trial.[9]

We have recognized that "[t]he use of special interrogatories ... facilitates appellate review ... for such use frees the court from having to survey every possible basis for the jury's decision." *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1361, 220 USPQ 763, 773 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). The district court, in denying Chrysler's post-trial motions, analyzed all of the special interrogatories answered by the jury and cited evidence presented to the jury pertinent to each interrogatory, including expert witness testimony. Thus, it is clear that the jury verdicts were supported by substantial evidence. The de-

---

8. "In order to meet a means-plus-function limitation, an accused device must (1) perform the identical function recited in the means limitation and (2) perform that function using the structure disclosed in the specification or an equivalent structure." *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1578, 27 USPQ2d 1836, 1840 (Fed.Cir.1994).

9. The jury decided some 39 special questions concerning the issue of infringement. Five special questions were directed to infringement of claim 5 of '790 patent, 17 special questions to claim 16 of the '836 patent, and five special questions to claim 6 of the '374 patent.

tailed nature of the special interrogatories, as well as the extensive analysis by the trial judge in considering Chrysler's post-trial motions, are impressive indeed, giving great credibility to the decisions reached.

We conclude that Chrysler has failed to show that on the entirety of the record reasonable persons could not have found the facts necessary to support the jury's verdicts of infringement. Because substantial evidence supports the jury's verdicts and because the legal conclusions implied from those verdicts are consistent with the jury's findings, the district court's denial of Chrysler's motion for judgment as a matter of law is affirmed.

### Cross–Appeal

Kearns now cross-appeals a number of rulings issued by the district court that Kearns claims precluded him from obtaining all the relief and compensation to which he was entitled under the law. At issue are the district court's orders (1) granting Chrysler's motion for summary judgment on Kearns' right to seek injunctive relief, (2) granting Chrysler's motion for summary judgment on Kearns' right to recover lost profits as damages, (3) denying Kearns' motion to disqualify Chrysler's counsel for conflict of interest, (4) precluding Kearns from challenging the number of infringing units without filing supporting documentary evidence, (5) denying Kearns' motion to offer separate evidence of willful infringement by American Motors, (6) granting Chrysler's motion for a directed verdict on the issue of willfulness, (7) assessing prejudgment interest for the period from March 2, 1982 to June 11, 1992 at simple interest rather than 2% above the prime rate, and (8) awarding Chrysler $677,332.62 for attorneys' fees and expenses. We will address each of these rulings in turn to the extent necessary.

### 1. Post-expiration Injunctive Relief

■ Shortly before trial, Kearns expanded his claim for relief to include injunctive relief.

Kearns believed that Chrysler's infringement deprived him of the "full value" of his patents during their respective terms by effectively extinguishing his exclusive right to sell his patented IWW systems to automobile manufacturers. Kearns urged that Chrysler should be enjoined from manufacturing infringing IWW systems for a period of sufficient duration "to put him in [a] position where the harm [caused by] past infringement during the terms of the patents in suit is rectified." The district court refused to grant such relief because the patents had already expired.[10] The court concluded that "there is nothing in statute or common law giving [Kearns] the right to an injunction against practicing the disclosures in an expired patent."

In arguing that the district court erred in denying him post-expiration relief, Kearns claims that the $11 million damage award is not adequate to compensate him for the loss he sustained as a result of Chrysler's infringement. Kearns contends that Chrysler's infringement stripped him of "exclusive time" over his patents in violation of his rights under the U.S. Constitution and the patent laws, and that he is entitled to have that time restored to him. That contention, however, finds no basis in the statutory scheme governing patent infringement remedies.

Under the laws enacted by Congress, a patent grants the patent owner the right to exclude others from making, using, or selling the claimed invention in the United States for the term of seventeen years. 35 U.S.C. § 154 (1988). When that exclusive right is infringed, the patent owner is authorized to obtain compensation in the form of damages, measured, *e.g.*, by lost profits or a reasonable royalty. 35 U.S.C. §§ 281, 284 (1988). Moreover, the statute expressly provides for the grant of injunctions "in accordance with the principles of equity." 35 U.S.C. § 283 (1988). In view of the fact that the principal right afforded by a patent is the "right to exclude," we have noted that "[t]he nature of

---

**10.** The '836 patent expired in 1984 and the '790 and '374 patents both expired in 1988.

the patent grant ... weighs against holding that monetary damages will always suffice to make the patentee whole." *H.H. Robertson Co. v. United Steel Deck, Inc.,* 820 F.2d 384, 387–88, 2 USPQ2d 1926, 1930 (Fed.Cir.1987). Indeed, "[w]hile monetary relief is often the sole remedy for past infringement, it does not follow that a monetary award is also the sole remedy against *future* infringement." *Atlas Powder Co. v. Ireco Chemicals,* 773 F.2d 1230, 1233, 227 USPQ 289, 292 (Fed.Cir. 1985) (emphasis added). However, § 283 relief is available only to "prevent the violations of any right secured by patent." Thus, when the rights secured by a patent are no longer protectable by virtue of expiration or unenforceability, entitlement to injunctive relief becomes moot because such relief is no longer available. *See Illinois Tool Works, Inc. v. Grip–Pak, Inc.,* 906 F.2d 679, 681, 15 USPQ2d 1307, 1308 (Fed.Cir.1990).

An invention claimed in a patent passes into the public domain upon termination of the patent's 17–year statutory term. Because the rights flowing from a patent exist only for the term of the patent, there can be no infringement once the patent expires. Here, all the asserted patents expired before the commencement of trial. Therefore, Kearns "can no longer obtain injunctive relief with respect to [those patents]." *See Kinzenbaw v. Deere & Co.,* 741 F.2d 383, 386, 222 USPQ 929, 931 (Fed.Cir.1984), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985); *see also Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo, Ltd.,* 754 F.2d 345, 347, 224 USPQ 863, 865 (Fed.Cir.1985). Granting the relief requested by Kearns would impermissibly extend the statutory term beyond that established by Congress. Congress has the power to provide for patent term extension in appropriate circumstances, *see* 35 U.S.C. §§ 155, 156 (1988), but it has not done so here and we cannot legislate in its place. *See Denkler v. United States,* 782 F.2d 1003, 1008 (Fed.Cir.1986) ("Should Congress wish to extend the [statute's scope], it knows how to do so."). The expiration of Kearns' patents precludes the grant of injunctive relief and the judgment for $11 mil-

lion in damages thus amounts to adequate and full compensation under the law for Chrysler's past violation of his patent rights.

Kearns argues that our decision in *Roche Prods., Inc. v. Bolar Pharmaceutical Co., Inc.,* 733 F.2d 858, 221 USPQ 937 (Fed.Cir.), *cert. denied,* 469 U.S. 856, 105 S.Ct. 183, 83 L.Ed.2d 117 (1984), suggests that the availability of post-expiration equitable relief is simply a matter within the discretion of the trial court. In *Roche,* the trial court denied the patent owner's request for a permanent injunction because it found there was no infringement. Although the trial court's finding of noninfringement was reversed on appeal, the request for injunctive relief became "no longer ... necessary" because the patent had expired. Despite the patent's expiration, the case was remanded to the lower court with directions to fashion an appropriate equitable remedy to redress the harm to the patent owner caused by past acts of infringement. *Id.* at 865, 221 USPQ at 942. Kearns argues that the district court should consider taking action similar to that contemplated in *Roche.* Kearns, however, is not in a position to benefit from such relief.

The post-expiration relief discussed in *Roche* was intended to return the parties to the status quo before infringement (*e.g.,* destruction of data obtained as a result of the infringement) and was not intended to prohibit future use of the invention. Importantly, the relief was also considered in the context of harm to a patent owner that had been selling the patented product. Thus, deferral of competition by an infringer who had entered the market prematurely, *i.e.,* before the patent expired, was considered as a means of equitably compensating the patent owner. In contrast, because Chrysler has been manufacturing and selling its infringing IWWs for many years and Kearns has not (see *infra* ), there is no basis for granting relief similar to that contemplated by the court in *Roche.*

We sympathize with Kearns' complaint that his patents have expired without his ever being able to exclude others from prac-

tice of his invention, especially since he is an individual inventor contending with a multitude of giant corporations.[11] While it is of course the essence of a patent that it provides the right to exclude, the same statute that grants that right also permits other parties, including accused infringers, to challenge the validity of a patent and to contest a charge of infringement. *See* 35 U.S.C. § 282 (1988). Moreover, entitlement to an injunction implementing the right to exclude, as compared with only assessing damages against an infringer, is not absolute even during the life of a patent, but is discretionary. *See* 35 U.S.C. § 283 ("courts having jurisdiction of cases under this title *may* grant injunctions" (emphasis added)); *see also City of Milwaukee v. Activated Sludge, Inc.,* 69 F.2d 577, 593, 21 USPQ2d 69, 85–86 (7th Cir.1934); *Vitamin Technologists, Inc. v. Wisconsin Alumni Research Found., Inc.,* 146 F.2d 941, 944–45, 63 USPQ 262, 267 (9th Cir.1944). Here, because Kearns' patents have expired, the district court certainly did not abuse its discretion in denying injunctive relief.

It is unfortunate that Kearns feels that he never enjoyed an exclusive status under his patents, but that is simply a consequence of the right of others to challenge his patents and the fact that his patents have expired. The patent statute does provide for increased damages and attorney fees as additional relief for aggrieved patent owners, *see* 35 U.S.C. §§ 284, 285 (1988), but Kearns did not persuade the district court that he was entitled to such relief.

We therefore conclude that the district court properly granted summary judgment in favor of Chrysler on Kearns' request for post-expiration injunctive relief.

### 2. Lost Profits

■ Kearns argues that the district court erred in granting Chrysler's motion for summary judgment on Kearns' claim for damages based on lost profits, rather than a reasonable royalty. A patent owner bears the burden of proof on damages. *Fromson v. Western Litho Plate and Supply Co.,* 853 F.2d 1568, 1574, 7 USPQ2d 1606, 1612 (Fed. Cir.1988). Kearns has not carried that burden with respect to lost profits.

■ A lost profits award is appropriate only if the patent owner can prove there was a reasonable probability that "but for" the infringement, it would have made the infringer's sales. *Water Technologies Corp. v. Calco, Ltd.,* 850 F.2d 660, 671, 7 USPQ2d 1097, 1106 (Fed.Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 498, 102 L.Ed.2d 534 (1988). One way to establish "but for" causation is to meet the four-part test pronounced in *Panduit Corp. v. Stahlin Bros. Fiber Works,* 575 F.2d 1152, 1156, 197 USPQ 726, 729–30 (6th Cir.1978). *See Standard Havens Prods.,* 953 F.2d at 1372–73, 21 USPQ2d at 1331. To recover under that test, the patent owner must prove (1) a demand for the patented product, (2) an absence of acceptable noninfringing substitutes, (3) *manufacturing and marketing capability to exploit the demand,* and (4) the amount of profit the patent owner would have made. *Id.* (emphasis added).

■ In ruling against Kearns, the district court concluded that Kearns failed to prove the *Panduit* requirements for lost profits, particularly with regard to whether he possessed the capability to manufacture and market IWWs. The court determined that "[a]t best plaintiff's offer of proof demonstrates plans for manufacture that were tentative, speculative and contingent. Plaintiff does not suggest he ever made any sales of intermittent windshield wipers or had the manufacturing capability in hand to do so." Kearns disputes the court's finding, stating that his company "Kearns Engineers" had the capacity to manufacture, market, and sell IWWs since the 1960's and that Chrysler's infringement prevented him from selling his IWWs to Chrysler. That contention, howev-

---

**11.** The fact that Kearns has fired several of his attorneys and attempted to conduct massive multiple suits *pro se* may be relevant to his dilemma.

er, is not supported by the record.[12] Where, as here, a patent owner fails to prove lost profits, the court is left with no alternative but to have damages determined on the basis of a reasonable royalty. *See Water Technologies,* 850 F.2d at 673–74, 7 USPQ2d at 1108.

Accordingly, we affirm the district court's grant of summary judgment in favor of Chrysler on the issue of lost profits.

### 3. Other Rulings

We have carefully reviewed the district court's other rulings respecting willful infringement, disqualification of counsel, prejudgment interest, and attorneys' fees and costs. The rulings are adequately supported by the record and are consistent with governing law. We need not address Kearns' contentions in detail. For purposes of our decision, suffice it to say that Kearns has not identified any reversible error in law or fact made by the district court in reaching its decisions. Accordingly, we affirm the district court's rulings.

### CONCLUSION

The district court did not err in denying Chrysler's post-verdict motions. Nor did the district court commit any reversible error in ruling on the various issues disputed by Kearns. Accordingly, the district court's judgment is affirmed in all respects.

*AFFIRMED.*

12. We note that the appendices filed by Kearns on appeal contain documents not considered by the district court. We, of course, must limit our review to the record produced at trial. *DMI,* 802 F.2d at 426, 231 USPQ at 279.